(No. 15587.—Reversed in part and remanded.)

THE VILLAGE OF ELMWOOD PARK, Appellee, *vs.* L. H.
MILLS & SONS *et al.* Appellants.

*Opinion filed February 19, 1924.*

1. SPECIAL ASSESSMENTS—*objections must be specific before evidence can be introduced.* Where evidence is required to establish objections to an improvement the objectors should state the facts showing the ground of objection, and if they do not do so the petitioner for the improvement may object to evidence offered in support of the objections.

2. SAME—*objections must show points relied upon.* Objections in a special assessment proceeding must be made in such a manner as to show the point on which a decision is asked, so that the opposite party may meet it if he can, and where many objections are filed it is the duty of the court, upon motion by the petitioner, to require the objectors to point out specifically upon what objections they rely.

3. SAME—*effect of failure to comply with order to make objections specific.* Where many objections are filed to the confirmation of an assessment and the court orders the objectors to point out specifically what objections will be relied upon, so they can be understood without referring to them by number, the action of the objectors in disregarding the order and merely specifying certain numbered objections upon which they intend to rely is a waiver not only of all objections not so specified but also of any objections which are not sufficiently specific to show the points relied upon.

4. SAME—*how jurisdiction is obtained in a special assessment proceeding.* The county court has jurisdiction of the general subject of special assessments and their confirmation, and the filing of the petition for confirmation gives it jurisdiction of the particular case and of the petitioner, and the giving of the statutory notices gives it jurisdiction of the property owners.

5. SAME—*what objections do not go to jurisdiction.* Objections that no estimate was made or no public hearing was held do not go to the jurisdiction of the court, as the judgment of confirmation, if said objections are not made upon the application for confirmation, is valid and not subject to collateral attack, and if such objections are made, the court clearly has jurisdiction to decide them. (*Clarke* v. *City of Chicago,* 185 Ill. 354, criticised.)

6. SAME—*objections to method of procedure for an improvement and making of assessments may be waived.* Objections to the

method of procedure of the board of local improvements or village trustees in providing for an improvement and levying special assessments go only to the manner of the exercise of jurisdiction and may be waived.

7. SAME—*necessity of property to be assessed determines reasonableness of improvement.* In a proceeding for the confirmation of an assessment for the laying of water pipes in certain streets of a village it is not only the convenience or necessity of the people who will get the use of the water which must be considered but also the effect of the improvement upon the property which will be assessed to pay for it; and property in one portion of the village not needing the improvement cannot be included merely because its assessment will lighten the burden of another portion where the improvement is needed.

8. SAME—*what portion of suburban village should not be included in water improvement.* An unimproved and uninhabited portion of a village near the city of Chicago should not be included in an improvement consisting of the laying of water pipes where there is no present prospect for the use of the property for residence purposes because of its distance from any system of transportation to the city and where no system of transportation is in prospect in the immediate future.

9. SAME—*when objection that cost of fire-hydrants was not assessed as public benefits is not well taken.* Where the court has ordered the cost of fire-hydrants to be eliminated from the assessment of the objectors' property for the laying of water pipes, an objection that said cost was not assessed as public benefits is not well taken, as it is no concern of the said objectors whether the amount of the reduction is assessed against the municipality or other property owners.

APPEAL from the County Court of Cook county; the Hon. E. M. MANGAN, Judge, presiding.

DANIEL S. WENTWORTH, and DAVID B. MALONEY, for appellants.

WILLIAM T. HAPEMAN, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The president and trustees of the village of Elmwood Park passed an ordinance providing for the laying of cast-iron water supply-pipes in certain streets of the village and

caused a petition to be filed for the assessment of the cost upon the property benefited by the improvement. A number of owners of property appeared and filed objections. The objections consisted of a printed list containing more than one hundred objections, many of which had no application whatever to the facts in regard to this particular assessment and many others were stated so vaguely and indefinitely as to present no issue of fact. On the motion of the village it was ordered that the objectors file in writing the specific objections upon which they expected to rely, fully and in detail, so that the court and counsel would be fully informed as to the exact points relied on and without referring to the general objections filed by numbers, by the 14th day of March, 1923. The objectors made no attempt to comply with this rule. They merely filed a statement in writing that the legal objections on which they intended to rely were those numbered 1, 2, 10, 17, 20, 22, 34, 58, 65, 66, 89 and 91, but there was no specification in detail of the exact points relied on or attempt to specify. No motion was made to strike this statement from the files and no further action was taken to require a compliance with the order. After the village offered in evidence the assessment roll, counsel for the objectors stated his objections to the ordinance and proposed to introduce evidence that the estimate of the cost of the improvement was never before the board of local improvements, that the president never signed the original estimate, that there is in the record of the board of local improvements no record of any estimate subsequent to the amendment by the board or anything to show that the board of local improvements ever made the recommendation attached to the petition or passed the ordinance attached to the petition, and that certain elements of the improvement were indefinite and insufficiently described, viz., "Eddy valves," "Class B pipe," "Clow's man-hole covers and frames," and "Standard adopted by American Waterworks Association May 12, 1908." The

court sustained objections to evidence offered by the objectors in support of any objection not specifying the exact point relied upon, in accordance with the previous order of the court. Evidence was heard as to the reasonableness of the improvement and the legal objections were overruled. Upon a trial by the court on the question of benefits the amount of the assessment was reduced and an order of confirmation was entered, from which the objectors have appealed.

The objections specified by number in the statement of the appellants were: (1) The ordinance for the proposed improvement was incomplete, informal and otherwise invalid; (2) the city council had no authority to pass the ordinance herein; (10) the petition, assessment roll and the notice of confirmation proceedings do not comply with the provisions of the statute and are informal, insufficient and void; (17) the property of these objectors is assessed more than its proportionate share of the cost of the proposed improvement fairly and equitably chargeable upon the same; (20) the estimate of the cost of the improvement is void; (22) the assessment upon the property of the objectors exceeds the benefits which will accrue to said property from the proposed improvement; (34) the notices of public hearing have not been given as required by statute; (58) no part of the cost of the proposed improvement has been apportioned against the petitioner as public benefits; (65) the ordinance is unreasonable and void because the proposed improvement is unnecessary; (66) the nature and character of the improvement proposed by the ordinance are not such as the character of the property warrants or demands, and the cost of the improvement and the assessment against the property of these objectors largely exceed the benefits to said property; (89) no public hearing was had by the board of local improvements, as required by law; (91) the estimate includes items not authorized by law and is therefore void.

Objections Nos. 1, 2, 10, 20 and 34 did not specify any point relied upon and stated no fact as a basis for the introduction of evidence. They amounted to no more than the statement that the proceedings were irregular and void. They furnished no information to either court or counsel as to the objectors' claims and stated no fact or point upon which evidence was admissible or could be produced. The objections that the ordinance was incomplete, informal and invalid and the council had no authority to pass it, and that the petition, assessment roll and notice of confirmation did not comply with the provisions of the statute, that the estimate of the cost was void, and the notice of public hearing had not been given as required by the statute, formed no basis for the introduction of testimony. If the objections could be considered at all, they raised no other question than such as might arise upon the face of the proceedings themselves. It is not argued that the ordinance is void on its face, that the lack of authority of the board of trustees is apparent on the record, or that any of the irregularities in the proceedings specified in the objections can be shown without introducing evidence. Evidence was required to establish the objections which the appellants sought to raise, and it was therefore necessary to state the facts showing the existence of the objections. This the appellants were ordered to do and failed to comply with the order. The question arose upon objection to evidence offered. For instance, in support of objections 1 and 2, that the ordinance was incomplete and otherwise invalid and the council had no authority to pass it, the appellants offered evidence which they argued would show that there was no record of the board of local improvements showing that the board of local improvements made the recommendation of the improvement to the board of trustees or presented the ordinance which was passed by the board of trustees. An objection to this offer was sustained because the appellants' objection did not specify this ground of objection.

Counsel for the appellants argued that the evidence offered went to the question of jurisdiction,—the authority of the council to pass the ordinance, which was necessary to the jurisdiction of the court.

Objections in a special assessment proceeding must be made in such a manner as to show the point on which a decision is asked, so that the opposite party may meet it if he can. (*Fisher* v. *City of Chicago,* 213 Ill. 268.) The object of filing objections to the petition is to notify the court and parties of the points, whether of fact or law, relied upon by the objector, and where many objections are filed it is the duty of the court, upon motion by the petitioner, to require the objector to point out specifically upon what objections he relies. Upon his failure to comply with such order, the objections which do not state specifically the points relied upon will be considered as waived and will not be considered by this court upon appeal. (*Clark* v. *City of Chicago,* 214 Ill. 318.) The objectors having been required to state their objections specifically, without reference to numbers, declined to do so but did specify certain numbered objections upon which they would rely. This could be regarded in no other way than as a waiver of all other objections not mentioned and of the right to urge any objections as to which they had been required to specify the exact points relied upon in detail but had not attempted to comply with the order. So far as the objections which had been filed did show the points relied on, the objectors were entitled to rely upon them and to introduce evidence to establish them.

The county court had jurisdiction of the subject matter, the general subject of special assessments, and their confirmation. The filing of the petition gave it jurisdiction of the particular case and of the petitioner. The giving of the statutory notices gave it jurisdiction of the property owners. The objections urged do not go to the question of the jurisdiction of the court to determine as to the valid-

ity of the ordinance or the authority of the city council, but only to the regularity of the exercise of that power. The mode provided by statute for making a special assessment must be followed, and a failure to observe the conditions imposed upon the exercise of the power will render the proceedings void. (*Clarke* v. *City of Chicago,* 185 Ill. 354.) It is said in that case that the ordinance being invalid for want of a preliminary hearing upon the question of the estimate, the court had no jurisdiction to entertain the proceeding based upon the invalid ordinance. The use of the word "jurisdiction" was incorrect, and all that was intended was that the court could not, according to law, sustain the proceeding. The court clearly had the right to decide whether the ordinance was valid or not, and the right to decide is jurisdiction. The fact that no estimate was made or no public hearing was held, while available upon the application for confirmation, does not deprive the court of jurisdiction. If the objection is not then made, the judgment of confirmation is valid and not subject to collateral attack. (*Springer* v. *City of Chicago,* 308 Ill. 356; *Pipher* v. *People,* 183 id. 436.) The objection goes only to the power of the board of local improvements to initiate the improvement and of the council or board of trustees to pass the ordinance. These bodies have these respective powers, the objection goes only to the manner of the exercise of them, and it may be waived. The advantage of even a constitutional provision for the protection of property rights may be waived, and is waived unless an objection is made by the party entitled to the benefit of it, whenever it appears that the right has been invaded. *Taylor Coal Co.* v. *Industrial Com.* 301 Ill. 381; *Pocahontas Mining Co.* v. *Industrial Com.* id. 462.

The appellants having refused to comply with the order requiring them to specify the points relied upon, waived the points not specified. The court properly disregarded the objections which were not specifically set out fully and

in detail so as to give full information as to the exact point relied on and properly excluded all evidence in regard to these objections.

In regard to objection No. 17 no evidence was offered. Objection No. 58 appeared on the face of the proceedings. No evidence was offered to sustain objection No. 89, that no public hearing was had, or No. 91, as to items improperly included in the estimate. The only objections which raised any issue of fact as to which evidence was offered and was admissible were No. 22, that the amount of the assessment exceeded the benefits, and Nos. 65 and 66, that the ordinance was unreasonable. Much evidence was heard on these objections.

The record shows that Elmwood Park is a village of about 2750 population,. containing two square miles of territory, being two miles long north and south and a mile wide east and west. Fullerton avenue is on a section line extending east and west and dividing the north half of the village from the south. The Chicago, Milwaukee and St. Paul railroad, running from a few degrees south of east to a few degrees north of west, crosses the east boundary line of the village at Fullerton avenue, so that somewhat more than half the territory of the village is south of the railroad. All of the village between the railroad and Fullerton avenue has been subdivided. The part of the village south of Fullerton avenue consists of one section of land, of which the east half and the east half of the northwest quarter have been subdivided. The system of water pipes provided for by the ordinance covers all the subdivided part of the village south of the railroad. The east line of the village is Harlem avenue, which constitutes the boundary between the village and the city of Chicago. The south line of the village is North avenue, which constitutes the boundary between the village of Elmwood Park and the village of River Forest. South of North avenue and east of Harlem avenue is the village of Oak Park. Armitage avenue

extends west on the half-section line from Harlem avenue three-quarters of a mile to Seventy-eighth avenue. The territory between Harlem avenue and Seventy-eighth avenue north of Armitage avenue to Fullerton avenue is divided into forty-eight blocks by eleven north and south and three east and west intersecting streets. South of Armitage avenue to North avenue the territory west of Harlem avenue for half a mile to Seventy-sixth avenue is divided into thirty-two blocks by seven north and south and three east and west intersecting streets. The southeast corner of the village, at Harlem and North avenues, is two miles north and nine miles west of the court house in Chicago. The appellants L. H. Mills & Sons purchased 140 acres in this section in 1910 for the purpose of building development. In 1915 they made an effort to sell the property in half-acre tracts. It was subdivided and platted, and they built a modern bungalow facing Harlem avenue as an example of a half-acre suburban improvement. They advertised extensively, spending nearly $30,000 in their effort to sell the property, and they made contracts for the sale of about 40 acres out of the 140. The property south of Armitage avenue has not been improved except by the bungalow mentioned and two or three other houses. There are no paved streets in the village and there is no system of sidewalks south of the railroad. There are no streets south of Armitage avenue which can be used for driving. The streets are merely platted but there has been no grading or breaking of the sod. The ground is open prairie. Cinder paths were put in in 1915, but they have all disappeared and can not be found now. The greater part of the development of the village is north of the railroad. There are perhaps three hundred houses south of the railroad. The improvement in the part of the village south of the railroad is principally in the north end, toward Fullerton avenue. The two-story brick school house is in that part of the village, at which there is an attendance of about 450 pupils. Most

of the houses south of the railroad have been there for a number of years. Some were built in 1910 and others at different times since, the average age being four or five years. The property south of Armitage avenue is wholly unimproved except for the three or four houses mentioned. From seventy-five to eighty-five per cent of the property between Armitage avenue and Fullerton avenue is unimproved.

The parties agree that the highest and best use of property in the territory affected by the improvement is for residence purposes, with bungalows of a reasonably good construction. The property will be occupied by people who will do business in the loop in Chicago or will work in the factories and industrial employments in that city. The distance to the nearest large manufactory is seven miles, though there are some small industrial plants about a mile and a half from the property. The use of the village for residences for people engaged in these employments depends upon the transportation. The nearest transportation to the property of the appellants is the railroad. From the station at Montclair, three-quarters of a mile from the nearest lot and a mile and a quarter from the farthest, there are seventeen trains during the twenty-four hours,—three to the city in the morning rush hours and two from the city in the evening rush hours,—the average running time being twenty-eight minutes. The nearest street car lines are at Harlem and Fullerton avenues, a mile north, and Harlem and Chicago avenues, a mile south of North avenue. The former runs to the loop with a transfer. The fare is seven cents. The other line runs to Sixtieth avenue,—the boundary between Oak Park and Chicago,—for a ten cent fare and an additional seven cent fare to the loop. The running time of each is about an hour. On North avenue the street car line is a mile and a half east of Harlem avenue.

The demand for the property is and has been limited, and sales have been infrequent because of the remoteness from transportation and the absence of improvements. The

311—10

development of the property depends, of course, on both transportation and other improvements. While some difference of opinion is expressed as to which must come first, it seems apparent that a water supply will not bring purchasers who desire to build homes to a property unless there is either a reasonably convenient means of transportation between their homes when acquired and the place where they must have employment, or a reasonably well assured prospect of such means of transportation within a reasonable time. The great bulk of this property is situated a mile and a half or more from any means of transportation. There is nothing in the record to indicate that any improvement is contemplated immediately or in the near future in the means of transportation, either by street cars or railroad. The ground in which it is proposed to extend the water pipes south of Armitage avenue is entirely unimproved. There are no streets, no walks, no lights, no way to get to it. The two or three houses on the land would find the water a convenience, though the houses on the west side of Harlem avenue are now getting water from the Chicago system through pipes across Harlem avenue by arrangement with the city waterworks. It is desirable to have water for the residences north of Armitage avenue and the school house, and the improvement will be of benefit to this property.

It is stated by the appellants in their brief that they do not claim that the putting in of the water north of Armitage avenue is unreasonable but they do claim it is unreasonable south of Armitage avenue. There is demand for the water north of Armitage avenue and the putting of it in will add to the value of that property, and it would no doubt be advantageous to that property also if the property south of Armitage avenue should be included in the district and help to bear the expense, but this does not justify the inclusion of the latter property and its assessment unless it appears that the putting in of the water will add to the

value of the property south of Armitage avenue. It is not only the convenience or necessity of the people who will get the use of the water which must be considered, but also the effect of the improvement upon the property which will be assessed to pay for it. The witnesses for the petitioner express the opinion that it will add $5 a foot to the property south of Armitage avenue and the assessment amounts to about $250 a lot, but the witnesses for the objectors testify that the improvement will not add anything to the value of the lots south of Armitage avenue. The addition to the value depends, of course, upon the making of a market for the property. Unless the property becomes salable and is sold for use as dwellings the water pipes in the streets will be of no advantage to it and will not add anything to the value. Directly across North avenue the village of River Forest for a half mile south is in the same undeveloped condition. The condition is the same east of Harlem avenue in the city of Chicago for a mile east on the north side of North avenue, though property there has the benefit of the city water, and in the village of Oak Park for half a mile south on Harlem avenue.

Eight of the twenty-eight blocks objected for, being 40 acres, lie north of and adjoining Armitage avenue. The remaining twenty blocks (100 acres) lie south of Armitage avenue. Total amount of the assessment roll was originally $315,137.60 and the assessment against the appellants' lots was $89,853.97. This was reduced by the court on the hearing of the legal objections and on the hearing as to benefits to $63,686.97, for which the assessment was confirmed. On the whole evidence it appears to be unreasonable to subject this unimproved and uninhabited property, from a mile to a mile and a half from transportation, to an assessment of more than $60,000 for laying water pipes for which there is no present or prospective use until some system of transportation is brought within reasonable reach of the property and while no system of transportation is in

prospect in the immediate future. There is no indication that such a system will be in operation until some remote and uncertain date.

One ground for objection was that no part of the cost of the improvement was assessed against the village as public benefits. The court found that the lots of the objectors should not be assessed the full cost of the fire-hydrants, and ordered the assessments against such lots reduced in the aggregate amount of $3500 for the cost of fire-hydrants. The order did not assess the amount of such reduction, or any amount, against the village for public benefits, and the appellants complain because this was not done. The order eliminated the charge for fire-hydrants from the assessment so far as the appellants' property was concerned, and it is not claimed that the amount was less than the proportionate share of the cost of the fire-hydrants chargeable to the appellants' lots. Whether the amount of the reduction is assessed against the village or the other property owners is of no concern to the appellants, since they do not have to pay it. Fire-hydrants are such part of a local improvement as may be paid for by local assessment. *O'Neil* v. *People,* 166 Ill. 561; *City of Springfield* v. *Springfield Consolidated Railway Co.* 296 id. 17.

So far as the appellants' lots north of Armitage avenue are concerned the improvement is conceded to be reasonable and the evidence as to the amount of benefits sustains the judgment of the county court, but it is unreasonable and oppressive to construct the improvement for the benefit of the lots north of Armitage avenue largely at the expense of vacant property for which there will be little demand until there is a prospect for better facilities of transportation. As to the lots north of Armitage avenue the judgment will therefore be affirmed, but as to the lots south of Armitage avenue it will be reversed and the cause will be remanded, with directions to dismiss the petition as to them.

*Reversed in part and remanded, with directions.*